## STATE ex rel. HUBBARD vs. SAXTON.

The act of 1856, organizing the county of Juneau, directed that the first election of county officers in that county should be held in February, 1857, but did not prescribe the time for any subsequent election of county officers in that county: *Held*, that the general provision of law relative to the election of county officers, applied to and controlled such subsequent election.

The constitutional term of office of a sheriff is two years, and the first election for sheriff in Juneau county having been held in February, 1857, the next election for that officer was properly held in 1858, and his term of office commenced in February, 1859. An election for sheriff of Juneau county, in November, 1859, was void.

QUO WARRANTO. The case is stated in the opinion of the court.

*Samuel Crawford* and *John Delaney*, for the relator.

*Collins, Atwood & Haskell*, for the respondent.

January 2.      *By the Court*, COLE, J. By a stipulation entered into between the attorneys of the relator and the respondent, the demurrer to the amended information in this case has been withdrawn, and judgment is to be given upon the facts and allegations of the information admitted to be true. The material facts of the information are these:

The first election for county officers in the county of Juneau, under the act of the legislature organizing that county (see laws of 1856, chapter 130, page 233), was held on the first Tuesday of February, 1857, at which election one George R. Nichols was elected to the office of sheriff of that county, who duly qualified and entered upon the discharge of the duties of such office. At the general election in 1858,

June Term,
1860.

State ex rel.
Hibbard
v.
Saxton.

the electors of the county voted for the respondent and for other persons, for the office of sheriff; the respondent re-ceived a majority of all the votes cast at that election for the office of sheriff; received also his certificate of election from the canvassing board; filed his bond, and took and filed the oath of office required by law to be taken and filed. It is alleged that some time in January, 1859, Nichols resigned, and the respondent was appointed to fill the vacancy, took possession of the office, and has continued to hold and exer-cise it until the present time, by virtue, we suppose, of his election thereto in November, 1858. The relator was elect-ed to the office of sheriff at the general election in Novem-ber, 1859, and claims the office by virtue of this election, in-sisting that the respondent's election in November, 1858, was null and void. And the question presented is simply whether that election was void or not. For if an election to the office could at that time be properly had—the term to commence upon the expiration of that of Nichols—then it is very apparent that the election in November, 1859, was ir-regular, and could confer upon the relator no right whatever to the office. About this, probably, there would be no seri-ous controversy. Was then the election of the respondent in November, 1858, legal and proper? We fail to see any valid reason why it was not. The latter clause of section 85, chapter 6, R. S. 1849, provides that "all county officers authorized by law to be elected in any county now organized in this state, shall, unless otherwise specially provided, be chosen at the general election in the year one thousand eight hundred and fifty, and at the general election in every second year thereafter." The same provision is found in the statutes of 1858 (section 97, chapter 7). Is there any satis-factory reason why this general provision of law should not apply to, and control the election to the office of sheriff in Juneau county, in November, 1858? We see none. The law organizing that county prescribes no time for choosing county officers after the first election. The legislature un-doubtedly intended that they should be elected in that coun-ty at the regular election for choosing county officers in the state, otherwise some other time would have been prescribed

in the act itself. Even the relator shows that he was elected, if at all, at the general election in November, 1859. The general provision, then, regulating and fixing the time for choosing county officers in the state, unless otherwise specially provided, must have been intended to apply to and regulate the time for electing those officers in Juneau county. We must either hold this or say that no time is fixed by law for electing county officers in that county. We should reluctantly come to this latter conclusion. We must, therefore, say that the general provision of law regulating the time for electing the county officers in the various counties in the state, was intended to apply to and fix the time for choosing those officers in Juneau county.

But it has been urged by the relator that such a view of the law was contrary to the decision of this court in the case of *The Attorney General ex rel. Joseph Schantz vs. Gustavus Bruntz*, 3 Wis., 787. But we do not so understand that decision. The question presented in *that* case was, whether it was competent for the legislature to change or abridge the period or term of office of a sheriff to less than two years. The court held that as the constitution prescribed that the term of that office should be two years, it was not in the power of the legislature to prolong or diminish it. The term of office must continue for two years, for the constitution had so declared. In this case, we suppose Nichols' term of office continued two years. It is stated in the information that he did not hold the office for the full term of two years, but resigned. But still the respondent's term of office would commence on the expiration of that of Nichols, and continue, according to the doctrine laid down in *Attorney General vs. Bruntz*, for two years. And therefore his term would not have expired when the information in this case was filed.

But it was contended, because the constitution provides that "sheriffs, &c., shall be chosen by the electors of the respective counties *once in every two years*," that this was equivalent to declaring that two years should intervene between all elections at which sheriffs were chosen. But this argument, if sound, is fatal to the rights of the relator, since it

clearly appears that his election was not within the period
of two years from the time when Nichols was elected. For
the latter was elected in February, 1857, while the former
claims to have been elected in November, 1859. And ac-
cording to this construction of the constitution, just two
years must elapse between the two elections. But we can-
not think that this is a correct view of the constitutional
provision. It was undoubtedly intended to fix, beyond the
control of the legislature, the term or duration of the office
of sheriff at two years, but not to prescribe that two years
must intervene between these elections.

Again, it was objected that the election of the respondent
was not regular because the term for which Nichols had been
chosen had not terminated. But we do not think this point
well taken. As a matter of fact, we believe all county offi-
cers are chosen before the expiration of the term of their
predecessors, for the purpose of avoiding the inconvenience
of a vacancy or interregnum in those offices. They are gen-
erally elected in November, and enter upon the duties of
their offices in January following. In the present case, the
respondent was elected in November, and would enter upon
his term at the expiration of that of Nichols in the following
February. The objection, if good, would show that the prac-
tice of choosing county officers before the commencement of
their terms of office, is all wrong, which we are not prepared
to say. We think the election of the respondent valid, and
that his term of office continues for two years from the
time he entered upon it, in February, 1859. It follows from
these views that judgment must be given in his favor to that
effect, and against the right of the relator to the office.

Judgment for the respondent.