**AETNA LIFE AND CASUALTY COMPANY, a corporation, Plaintiff-Appellant,**

v.

**LUMBERMEN'S MUTUAL CASUALTY COMPANY, a corporation, Defendant-Appellee.**

**No. 533-70.**

United States Court of Appeals,
Tenth Circuit.

Aug. 6, 1971.

Jay R. Bond, Oklahoma City, Okl. (Ross, Holtzendorff & Bond, Oklahoma City, Okl., on the brief), for plaintiff-appellant.

Calvin W. Hendrickson, Oklahoma City, Okl. (Pierce, Duncan, Couch & Hendrickson, Oklahoma City, Okl., of counsel, on the brief), for defendant-appellee.

Before SETH, COFFIN* and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The dispute here presented is between two insurance companies. Plaintiff-appellant, Aetna sought a declaratory judgment that defendant-appellee's liability insurance policy, Lumbermen's, extended to one Harry Donahue who, at the time of the underlying collision, had been engaged in transporting a vehicle owned by one David K. Layser across country from Los Angeles, California to Tulsa, Oklahoma.

The trial court found that at the time and place of the accident the driver Donahue had deviated from the route authorized by the owner of the car and that the vehicle was not then being used with the permission and consent of the owner.[1] The court went on to conclude that inasmuch as there was no permission there could be no coverage under the omnibus clause of the policy. Judgment was entered declaring that defendant-appellee was not obligated "to defend any action or actions arising out of an accident that occurred on November 2, 1968, in a collision in or near Ardmore, Oklahoma * * *."

At trial the facts were either expressly stipulated or there were stipulations as to the testimony which would have been given had the several witnesses been called. Aetna Life and Casualty Company was shown to have been the insurance carrier for AAAcon Auto Transport, Inc., the contractor which had arranged for the transportation of the vehicle involved in the collision. Lumbermen's Mutual Casualty Company was the insurance carrier for David K. Layser, the owner of the vehicle transported. Layser's wife engaged AAAcon Transport, Inc. to move David Layser's 1966 Dodge automobile from Los Angeles, California to Tulsa, Oklahoma. Thereafter, AAAcon advertised for a driver in the classified section of the daily newspaper and in response to the ad obtained the services of Harry D. Donahue.

Without the knowledge or consent of either Aetna or Layser, Donahue made arrangements to carry as a passenger one Margaret Mulvaney, who was the mother-in-law of a friend of Donahue. Mrs. Mulvaney was shown to have been a resident of Little Rock, Arkansas. Her destination, however, was Hot Springs, Arkansas, where she was to have been picked up by her son-in-law and daughter and transported by them from Hot Springs to Little Rock. The evidence in the case supported the trial court's finding that Donahue intended to drive Mrs. Mulvaney to Hot Springs before delivering the vehicle to Tulsa, although his unsworn statement and proposed testimony would have been that he intended to terminate the trip at Tulsa and to transport Mrs. Mulvaney from Tulsa to Hot Springs, Arkansas, on a bus.

The collision occurred at Ardmore, Oklahoma, which, according to the map which is part of the record, is roughly 200 miles by automobile road south of Tulsa and on a line with Hot Springs, Arkansas. There is no question about

---

* Of the First Circuit, sitting by designation.

1. "4. The Court specifically finds that at the time of the accident involved in this case the driver of the same was not proceeding toward Tulsa, Oklahoma, but was taking the lady passenger to Hot Springs, Arkansas, which was a deviation from the route to Tulsa, Oklahoma, and was unauthorized by the owner of the automobile being transported.

"5. The Court finds that the automobile owner, Mr. Layser, and his wife never intended that the car be driven to Hot Springs, Arkansas, or that a passenger be carried in the automobile while being driven from California ostensibly to Tulsa, Oklahoma.

"6. The Court finds that the intended deviation to Hot Springs, Arkansas, was an independent venture on the part of the driver, Donahue, and was made for his own purpose and was contrary to the express and implied terms of the agreement between the automobile owner and with AAAcon."

the fact that Donahue had fully intended to drive the Layser car to Hot Springs before delivering it to Tulsa. It is true that he had not reached a point of no return and conceivably he could have relented and driven to Tulsa first. But there is not the slightest indication that this was likely to occur. Ardmore is not on a direct route from Los Angeles to Tulsa and so Donahue had not only intended to deviate; he was at the time of the accident then actually deviating from his mission or undertaking. It is also clear that no express permission had been given by the owners which would have allowed a deviation to Hot Springs or to any place other than Tulsa.

Aetna contends that inasmuch as Donahue was at all times, up to and including the time of the accident, within geographic range of Tulsa, there was not a deviation of any kind. We disagree. He had, according to all of the creditable evidence, committed himself to following the Hot Springs course. Since the owners had not given express permission to take this Hot Springs trip, the narrow issue is then whether the deviation was of such a nature as to be considered within the scope of implied permission.

■ It is not clear from the record whether the Aetna policy was issued in Oklahoma or California. However, since the laws of Oklahoma and California are not in substantial conflict, and in view of the fact that the parties appear to have considered the Oklahoma cases to be applicable, we also have looked to these decisions for guidance on this unique question.[2]

■ It is pointed out in the extensive note reported in 5 A.L.R.2d 622 that the courts recognize three rules or approaches with respect to when a deviation will preclude insurance coverage of the conduct of a person (usually an employee) under the omnibus clause of the policy.

The first rule is the strict or conversion rule which requires that there must have been express permission to use the car in order for the policy to cover.

The second view requires only that there shall have been permission to take the vehicle. Any use while in the possession of the person driving it with permission is a permitted use.

The third rule is characterized by the author of the note as the moderate or minor deviation rule. A slight deviation from the scope of permission granted will not exclude the employee or other person from coverage under the omnibus clause. A necessary corollary is that a material deviation will be held to constitute a use of the automobile without the employer's implied permission.

The Supreme Court of Oklahoma has noted the existence of the three rules and it has adopted the so-called slight deviation or moderate rule. In Lloyds America v. Tinkelpaugh, 184 Okl. 413, 88 P.2d 356 (1939), the Oklahoma court said:

> There are three lines of authorities on this question under the usual omnibus clause, (1) those holding any deviation, no matter how slight, will defeat liability; (2) those holding that once permission is given, it will extend to any and all uses of the car; and (3) those holding that slight deviation does not violate the omnibus clause. We think the third, on both reason and authority, is the better rule, and that the trial court correctly decided that Griffith was using the car with the permission of the named assured.[3]

In a more recent decision, Northwestern Mut. Ins. Co. of Seattle v. Richardson, 470 P.2d 330 (Okl.1970), the Oklahoma

---

2. The Oklahoma conflict of laws rule calls for the application of the law of the place where the policy was made and executed in determining the nature of liability between insurance companies. Aetna Casualty and Surety Co. v. Gentry, 191 Okl. 659, 132 P.2d 326 (1942).

3. See Employers Casualty Co. v. Williamson, 179 F.2d 11 (10th Cir. 1950), wherein this Court applied the Oklahoma law and followed the so-called slight deviation rule as enunciated by the Supreme Court of Oklahoma.

court again stated its preference for the third or moderate rule.

The case at bar differs from the numerous cases dealing with the omnibus clause in that here there is no direct relationship between the owners of the car and the driver Donahue, whereby deviation is inferable. The authorization was specific and limited. It required Donahue to drive the car from Los Angeles to Tulsa. There was no room for implying that he could take a side trip and certainly not one of the magnitude of the Hot Springs deviation. Quite apart from this, however, we consider the deviation to be substantial.

We are in full accord with the finding and conclusion of the trial court that the deviation was substantial and unpermitted, and hence that the owner's policy did not cover the collision at Ardmore.

The judgment is affirmed.